## UNITED BENEVOLENT SOCIETY *v.* FREEMAN.

1. Where a contract of insurance between a benefit society and one of its members, which, among other things, covered accidental injuries, expressly stipulated that "written notice from the member or his representative, and a certificate from the attending physician, each stating the time, place, manner, and nature of injury, . . must be received at the [principal] office of the Society . . within ten days after the date of in-

jury, . . as conditions precedent to recovery," and the insured sustained such injuries, but failed to give the prescribed notice thereof within ten days from the date of the accident, it not having been impossible for him to do so, the society, in the absence of a waiver on its part of the time limit as to such notice, incurred no liability in consequence of such accident.

2  The facts in this case do not show that it was impossible for the insured to have given the prescribed notice within the time limited. It is, therefore, unnecessary to decide whether impossibility of giving the notice within ten days from the date of injury would be a sufficient excuse for a failure to do so within that period.

3. One can not be held to have impliedly waived a defense of the existence of which he had no knowledge at the time he did the act which is relied upon as a waiver thereof.

Argued May 2, — Decided July 13, 1900.

Action on insurance policy.   Before Judge Hammond. City court of Griffin.   December term, 1899.

*Shepard Bryan,* for plaintiff in error.
*Lloyd Cleveland,* contra.

FISH, J.   1. The application of the plaintiff for membership in the United Benevolent Society of America contained the following language: "I also understand that benefits will be allowed only while I am under the care of a duly accredited physician, and that I must notify the Society at the Home Office in writing within ten days from the commencement of disability, in order to entitle me to benefits."   The written contract of insurance sued on was expressly "subject to conditions on the back hereof."   On the back of the same, underneath the headline, "Conditions Under Which This Certificate Is Issued and Accepted," were fourteen numbered paragraphs stating the conditions.   The first of these was:   "Written notice from the member or his representative, and a certificate from the attending physician, each stating the time, place, manner, and nature of injury, sickness, or death, must be received at the office of the Society in Atlanta, Georgia, within ten days after the date of injury, commencement of sickness, or death, as conditions precedent to recovery; benefits for which the Society is liable shall be payable only after satisfactory, direct, and affirmative final proofs have been received by the Society in Atlanta, Georgia."   As the giving of the prescribed notice within ten days

from the date of the injury was expressly made a condition precedent to the liability of the insurance society, it inevitably follows that if this notice was not given within the specified time, the society, in the absence of a waiver of the time limit on its part, would not be liable, unless, perhaps, the circumstances following the injury rendered it impossible for the notice to be given within the ten days. No written notice of any kind of the injury was given to anybody within ten days from the date of the injury, and no notice, either verbal or written, was given to any officer or general agent of the defendant corporation until after the ten days had elapsed. On the day the plaintiff was accidentally hurt, he went to Griffin, to a doctor's office, to be treated, and while there sent for Slaton, the local soliciting agent and collector of the defendant, " and told him to notify the company that [the plaintiff] was hurt, which Slaton promised to do. Slaton, however, forgot to notify the society until more than ten days had elapsed since the plaintiff received the injury, and when he did notify it he neither stated the time, place, nor the manner and nature of the injury. Even if the notice which he, acting for the insured, gave the insurance society could be held sufficient in other respects, it was not given within the prescribed time, and therefore could not avail the insured, unless the society waived compliance with the condition as to time. The plaintiff does not contend that the verbal request which he made of Slaton was notice to the defendant corporation of his injury; and it is evident that notice to the mere local and collecting agent of the society at Griffin would not be notice to the society at its home office in Atlanta. The effect of the request which the plaintiff made of Slaton was that Slaton should act as his agent in notifying the society. Slaton failed to so act until the time prescribed within which to give the specified notice had expired. So a condition upon which the defendant's liability was dependent was not complied with.

2. The plaintiff contends that, notwithstanding this, the defendant is liable, for two reasons: first, because "plaintiff was totally incapacitated, on account of the accident, from attending to any business or from writing to the company to give them any notice of the injury for more than ten days, and did write them and furnish proofs as soon as he was able to do so;"

second, because "the defendant company waived any notice of the" injury within the ten days, "by sending out proofs to be filled after the ten days had expired." We deem it unnecessary to determine whether or not impossibility of giving the notice within the time limited would be a sufficient excuse for a failure to do so, for we do not think that the evidence is sufficient to show that the plaintiff could not have given the notice within the prescribed time. It probably would have been inconvenient for him to do so, and in order to have done so he might have had to get some one else to write for him, but that he was, as contended by his counsel, for more than ten days after the injury, totally incapacitated to give the notice to the defendant does not appear from the testimony. On the very day that he received the injury he went from his home into the city of Griffin and to a physician's office, in order to be treated, and while there sent for Slaton and told him to notify the insurance society that he was hurt. He had not lost the use of his mental faculties, for he realized both the necessity for getting medical treatment and the necessity for promptly notifying the defendant corporation of his injury, and he went to the office of the physician of his choice to be treated, and, while in the doctor's office, sent for Slaton and asked him to notify the society of the injury which he had sustained. After this, he sometimes came from his home into Griffin to see the physician, and sometimes the doctor went out to see him. He testified that he "did not forget to notify the company," but "notified Slaton and relied on him to notify the society;" that he "understood that [he] was required to give written notice, but expected Slaton to do it for" him. We think this testimony shows that he failed to notify the society within the time prescribed, not because it was impossible for him to do so, but because he relied upon and expected Slaton to do it for him. True, he did testify: "I was prostrated from my injury. I was not in mental or physical condition to think about giving the company notice in writing of my injury. I gave the notice as soon as I was able to do so." But the first part of this statement is inconsistent with the fact that he came and went from his physician's office, in order to be treated, and the latter part of it is inconsistent with the fact that he actually did think

about giving the notice, and sent for Slaton and asked and expected him to give the written notice for him. The fact that the accident caused him to temporarily lose the sight of one eye and rendered it, for a time, imprudent and pr. bably dangerous for him to use the other, did not render it impossible for him to give the requisite notice to the insurance society during the time that he was thus disabled. He could have had some one else to write for him. Probably he could have got his physician to do this for him, especially as, by the conditions of the contract, a certificate from the attending physician, containing the same information as that to be given in the notice from the insured, was required. If the accident had resulted in the total and permanent loss of the sight of both eyes, the necessity for giving the prescribed notice would still have existed. Many accident insurance policies provide for the payment of a specified sum of money for the total loss of sight, and yet require written notice of the injury to be given the insurance company within a certain period of time. So, granting that it was impossible for the insured to use his eyes at all during the ten days, we do not think this fact would be sufficient to excuse a non-compliance with the condition as to giving the notice, during that period of time. The evidence was not sufficient to support a finding that it was impossible for the plaintiff to give the notice to the society within ten days from the date of his injury.

3. Under the circumstances disclosed by the evidence, did the society, by sending out the blank forms to be filled out by the plaintiff and returned to it, waive the giving of the required notice within ten days from the date of the injury? There is undoubtedly much excellent authority for holding that if the society, with full knowledge of the facts, required the beneficiary under the contract of insurance to do some act or incur some expense or trouble which was inconsistent with the claim that the contract had become inoperative in consequence of a breach of the condition as to the time within which the notice should be given, then it impliedly waived this defense. But certainly no one can be held to have impliedly waived a defense of the existence of which he had no knowledge at the time he did the act which is relied upon as a waiver thereof. One can not be held

to have waived something of the existence of which he was igno-
rant.  "Acts ordinarily amounting to a waiver of a forfeiture
will not have that effect in the absence of knowledge of the for-
feiture."   28 Am. & Eng. Enc. L. 527.   In Bennecke *v.* Con-
necticut Mutual Life Ins. Co., 105 U. S. 359, Wood, J., said : "A
waiver of a stipulation in an agreement must, to be effectual,
not only be made intentionally, but with knowledge of the cir-
cumstances.   This is the rule when there is a direct and pre-
cise agreement to waive the stipulation.   A fortiori is this the
rule when there is no agreement, either verbal or in writing, to
waive the stipulation, but where it is sought to deduce a waiver
from the conduct of the party."   It does not appear, from the
evidence, that the society, at the time that it sent to the plain-
tiff the blank forms for the prescribed notice, knew that ten days
had elapsed since the accident occurred.   So far as appears from
the evidence, the only information which it had in reference to
the accident was that contained in the letter from Slaton to its
secretary.   In this letter Slaton simply stated that "W. T.
Freeman received a very bad accident several days since, and re-
quested me to notify you, but the matter escaped my mind until
now," and requested the secretary to "kindly send [Freeman] a
preliminary blank."   Upon receipt of this letter, the letter from
the society to Freeman, enclosing the blank forms, was written.
Information that the accident had occurred "several days since"
was not tantamount to information that ten days had elapsed
since its occurrence.   The expression "several days" might have
meant two or three days or any number of days less than ten.

When the letter from the society to Freeman was introduced
in evidence there appeared upon it the following memorandum,
written with a lead pencil, "Notice late."   The plaintiff con-
tends that this memorandum shows that the society knew, when
this letter was written, that the time within which the notice re-
quired by the contract should have been given had expired.
We do not think so.   The memorandum was no part of the
letter, and it did not appear when, or by whom, it was made,
nor whether it was on the letter when the same was received by
the insured or not.   Even treating it as a part of the letter, its
meaning is by no means clear.   It does not necessarily mean
that the writer of the letter knew that ten days had elapsed

since the date that Freeman was injured.    From Slaton's letter, the secretary of the society knew that Slaton had not promptly complied with Freeman's request to notify the society of the injury which he had sustained, and the purpose and meaning of the memorandum might have been simply to let Freeman know that the reason why the society had not sooner sent him the blank forms was because Slaton had delayed in notifying it of the injury.    So, even admitting that this memorandum was made by the official of the society who wrote the letter, we do not think it is sufficient to show that the society then knew that the time limit had expired before it received Slaton's letter. It certainly does not seem sufficient to show that the insurance society had full knowledge of the fact that the time for giving the notice under the contract had elapsed, and without full knowledge of this fact there could be no implied waiver of the time limit.    He who invokes the doctrine of implied waiver carries the burden of showing the existence of the facts necessary to constitute such a waiver.    In this case, for the reasons stated, we are of opinion that the plaintiff failed to successfully carry this burden.

*Judgment reversed.    All the Justices concurring.*